**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 07-21267-CIV-TORRES

CONSENT CASE

COMMODITY FUTURES TRADING
COMMISSION,

                    Plaintiff,

vs.

THE LIBERTY MUTUAL GROUP, INC.,
ADDISON FINANCIAL GROUP, INC.,
ADDISON MANAGEMENT GROUP, INC.,
HAMLIN MERCER GROUP, INC., COLFAX
MANAGEMENT GROUP, INC., ALAN
LERNER, FOREFRONT INVESTMENTS
LIMITED PARTNERSHIP, TODD GUTHRIE,
and BENJI DAYAN,

                    Defendants.

_____/

## ORDER ON FOREFRONT'S MOTION TO DISMISS THE COMPLAINT

This matter is before the Court on Defendant's Motion to Dismiss the Complaint ("Defendant's Motion") [D.E. 81-1].[1]  Forefront Investments Limited Partnership ("Forefront") contends that the Commodity Futures Trading Commission ("CFTC") lacks jurisdiction to regulate the off-exchange foreign currency ("forex") markets, and moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  CFTC filed a Response [D.E. 86] and Forefront filed a Reply [D.E. 97-1].

Defendant's Motion is ripe for disposition.  After carefully considering the court file, the arguments of counsel made at the hearing on December 12, 2007, and for the reasons that follow, this Court hereby **DENIES** Forefront's Motion to Dismiss.

---

[1]      The parties consented to this Court's jurisdiction in this matter. [D.E. 50-2].

## I.   *INTRODUCTION*

The CFTC filed a two count Complaint on May 16, 2007 for injunctive relief and civil penalties pursuant to the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1 *et seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*[2] In short, the CEA grants the CFTC the power to sue companies and individuals in federal court in cases of misconduct and fraud.

According to the Complaint, between February 2005 and June 2006, The Liberty Mutual Group, Inc. ("LMG"), Addison Financial Group, Inc. ("Addison Financial"), Addison Management Group, Inc. ("Addison Management"), Hamlin Mercer Group, Inc. ("Hamlin Mercer") and Colfax Management Group, Inc. ("Colfax"), acting as a common enterprise (the "Addison Enterprise") under the direction and control of Alan Lerner ("Lerner"), fraudulently solicited retail customers to open accounts to engage in illegal forex transactions with Forefront.   Contrary to promises of "large profits with limited risk," customers collectively lost over ninety percent of their $7,611,306.46 investment. Meanwhile the Defendants earned over $3,000,000 in commissions during the same time period.

Specifically, the Complaint contains two counts of fraud under the CEA.  Count 1 asserts that the Addison Enterprise violated 7 U.S.C. § 6c(b),[3] 17 C.F.R. § 1.1(b)(1) and

---

[2]      The record provides the bases for the following summary of facts that are material to the issues presented in the analysis portion of this Order.

[3]      "No person shall offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under this chapter which is of the character of, or is commonly known to the trade as, an 'option', 'privilege', indemnity', 'bit', 'offer', 'put', 'call', 'advance guaranty', or 'decline guaranty', contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the commission shall prescribe. Any such order, rule, or regulation may be made only after notice and opportunity for hearing, and the Commission may set different terms and conditions for different markets."  7 U.S.C. § 6c(b).

(3),[4] and 17 C.F.R. § 32.9(a) and (c)[5] by omitting material facts while soliciting customers to engage in illegal off-exchange foreign currency options transactions.  The CFTC seeks to hold Forefront vicariously liable for these violations as the principal of Addison Enterprise.  7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.[6]  Count 2 of the Complaint seeks to hold Forefront directly liable for violations of 17 C.F.R. § 32.11(a)[7] and 7 U.S.C. § 6c(b).

## II.    *ANALYSIS*

Forefront raises three arguments in its Motion to Dismiss: (i) it is exempt from CFTC jurisdiction under the CFMA because of its affiliation with two registered futures commissions merchants ("FCMs") that maintained records concerning financial activities; (ii) the CFTC has no jurisdiction to assert a claim for principal/agent liability against Forefront because Section 2(a)(1)(B) is not explicitly enumerated in Section 2(c)(2)(C) of the Act; and (iii) Commission Regulation 32.11(a) does not apply to off-exchange foreign currency transactions because this regulation was promulgated prior to the enactment of the CFMA.

---

[4]    "It shall be unlawful for any person, directly or indirectly, or in connection with any account, agreement, contract or transaction ... (1) to cheat or defraud or attempt to cheat or defraud any person ... (3) willfully to deceive or attempt to deceive any person by any means whatsoever."  17 C.F.R. § 1.1(b).

[5]    "It shall be unlawful for any person directly or indirectly: (a) To cheat or defraud or attempt to cheat or defraud any person ... (c) To deceive or attempt to deceive any other person ... in connection with ... any commodity option transaction."  17 C.F.R. § 32.9.

[6]    7 U.S.C. § 2(a)(1)(B) and 17 C.F.R § 1.2 establish the liability of the principal for the acts of an agent.

[7]    "Notwithstanding any other provision of this part 32, it shall be unlawful ... for any person to solicit or accept order for, or to accept money, securities or property in connection with, the purchase or sale of any commodity option, or to supervise any person or persons so engaged." 17 C.F.R. § 32.11(a).

### A.   *Motion to Dismiss Standard*

#### 1.   *12(b)(1) - Lack of Subject Matter Jurisdiction*

Forefront suggests this Court lacks subject matter jurisdiction over the CFTC's claim. Fed. R. Civ. P. 12(b)(1).  The CFTC bears the burden of demonstrating that this matter is within this Court's subject matter jurisdiction. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (party invoking jurisdiction bears burden of producing necessary facts to establish subject matter jurisdiction).  Regardless of how far a case has progressed, we must dismiss it if we determine that the Court lacks subject matter jurisdiction. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("[A] court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point ni the litigation where a doubt about jurisdiction arises."); *Wascura v. Carver*, 169 F.3d 683, 685 (11th Cir. 1999) ("If a district court lacks subject matter jurisdiction over a claim ... it necessarily follows that the claim states no violation of federal law.").

Attacks on the Court's subject matter jurisdiction based on Rule 12(b)(1) may be either facial or factual. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-1529 (11th Cir. 1990).  Facial attacks challenge subject matter jurisdiction based solely on the allegations in the complaint. *Id.* at 1529.  When courts review facial attacks, they must take allegations of the complaint at face value and ascertain whether they adequately allege subject matter jurisdiction.  *Id.*  Alternatively, when adjudicating factual attacks, courts may look at material from outside the four corners of the Complaint insofar as they relate to jurisdictional questions. *Dunbar*, 919 F.2d at 1529 ("[In a factual review] no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.").

Some factual attacks on federal court jurisdiction involve facts that are also determinative of the merits of the action. *Dunbar,* 919 F.2d at1528-1530 (whether U.S. border patrol agent was within the scope of his duties at time of accident giving rise to federal tort claim controlled both jurisdictional and liability questions); *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 (11th Cir. 1997) (whether ADEA defendant was an "employer" under the statute controlled whether statute governed the dispute and whether plaintiff stated a claim).  When a motion to dismiss implicates both jurisdictional and actual facts, the court should treat the motion "as a direct attack on the merits" and proceed under either Rule 12(b)(6), which requires it to take the complaint at face value, or Rule 56, which allows it to rule on the merits. *Lawrence,* 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981)).[8]

The CFTC claims that Forefront's challenges implicate the merits of Plaintiff's cause of action.  However, the CFTC fails to substantiate this argument, and this Court cannot discern how this action involves intermingling of jurisdictional and actual facts.  At issue is whether the Commodity Exchange Act ("CEA") and Commodity Futures Modernization Act of 2000 ("CFMA") afford the CFTC jurisdiction over the defendants, not whether the defendants engaged in fraud.  Whereas Defendants have introduced materials from outside the Complaint in support of their Motion, the Court will review the motion as a factual attack brought pursuant to Rule 12(b)(1).

---

[8]      Decisions of the Fifth Circuit entered prior to the close of business on September 30, 1981 are binding in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

## 2.   12(b)(6) - Failure to State a Claim

Additionally, Forefront contends that, even if the Court finds subject matter jurisdiction proper, the CFTC failed to sufficiently allege a cause of action in the Complaint.  Fed. R. Civ. P. 12(b)(6).  Pursuant to *Bell Atlantic Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007), to survive a motion to dismiss based on the failure to state a claim, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true."[9]  Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do."  *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombley*, 127 S.Ct. at 1964-65).  Taking the facts as true, a court may grant a motion to dismiss if no construction of the factual allegations will support the cause of action.  *Berry*, 497 F. Supp. 2d at 1364 (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

### B.   Forefront Was Not an Exempted "Affiliated Party" of an FCM Registered Under the CEA

Pursuant to 7 U.S.C. § 2(c)(2)(B), the CFTC has regulatory jurisdiction over off-exchange foreign currency transactions offered to non-eligible contract participants.[10]  Yet

---

[9]   The Court notes that the Complaint in this matter was filed prior to the *Twombley* decision.  However, because the Court concludes that Plaintiff's Complaint survives dismissal under both the new standard and the old one in place at the time of filing, it is not necessary to require the parties to submit briefs addressing the new standard.

[10]   An "eligible contract participant" is defined as an individual who has total assets in excess of $10,000,000.000; or has assets in excess of $5,000,000.00, and enters into the contract in order to manage the risk associated with an asset owned or a liability

transactions offered to non-eligible contract participants are exempt from CFTC regulation if the counterparty is an entity enumerated in 7 U.S.C. § 2(c)(2)(B)(ii).  Forefront operated two wholly owned subsidiaries, both registered FCMs, Forefront Investments Corporation, Inc. ("FIX") and FX Options 1, Inc. ("FXO").  These entities made and kept financial records of investment transactions.  Forefront therefore claims exemption from CFTC jurisdiction as "an affiliated person[11] of a futures commission merchant[12] registered under this chapter, concerning the financial or securities activities of which the registered person makes and keeps records under ... section 6f(c)(2)(B) of this title."  7 U.S.C. § 2(c)(2)(B)(ii)(III).  At first blush, Forefront would appear to fit this exemption because it directly controlled its wholly owned subsidiaries, FCMs that kept financial records.

The CFTC, however, takes the position that Forefront was not an affiliate of an FCM within the meaning of Section 2(c)(2)(B)(ii)(III) because of the record-keeping language under Section 6f(c)(2)(B).  The dispositive issue in this respect is whether "affiliated persons" are exempt if the registered FCM *opts* to keep records pursuant to

---

incurred by that person. 7 U.S.C. § 1a(12)(A)(xi).

[11]     By definition, an affiliated person is "any person directly or indirectly controlling, controlled by, or under common control with a futures commission merchant., as the Commission, by rule or regulation, may determine will effectuate the purposes of this subsection." 7 U.S.C. § 6f(c)(1)(I).

[12]     Pursuant to 7 U.S.C. § 1a(20) a "futures commission merchant" is an individual, association, partnership, corporation, or trust that

> (A) is engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility; and

> (B) in or in connection with such solicitation or acceptance or orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom.

Section 6f(c)(2)(B), or if the exemption applies only where the registered FCM is *required* to keep records.  Section 6f(c)(2)(A)-(B) provides as follows:

> (A) Each registered futures commission merchant shall obtain such information and make and keep such records *as the Commission, by rule or regulation, prescribes* concerning the registered futures commission merchant's policies, procedures, or systems for monitoring and controlling financial and operational risks to it resulting from the activities of any of its affiliated persons, other than a natural person.
>
> (B) The records *required* under subparagraph (A) shall describe, in the aggregate, each of the futures and other financial activities conducted by, and the customary sources of capital and funding of, those of its affiliated persons whose business activities are reasonably likely to have a material impact on the financial or operation condition of the futures commission merchant, including its adjusted net capital, its liquidity, or its ability to conduct or finance its operations.

7 U.S.C. § 6f(c)(2)(A)-(B) (emphasis added).  The CFTC relies on the language of Section 6f(c)(2)(B) ("the records required under subparagraph (A)") for the proposition that Section 2(c)(2)(B)(ii)(III) only applies to FCMs *required* to keep Section 6f(2)(B) records.

In fact, FIX and FXO did "make and keep financial records" but they did so voluntarily, and not under CFTC direction or regulation.  The record keeping requirement only applies to FCMs possessing sufficient assets. Specifically, 17 C.F.R. §§ 1.14(d) and 1.15(c)(1) provide that "any futures commission merchant which holds funds or property of or for futures customers of less that $6,250,000 and has less than $5,000,000 in adjusted net capital as of the futures commission merchant's fiscal year-end" is exempt from record-keeping requirements.  The Complaint alleges, and Forefront does not contest, that the FCMs (FIX and FXO) did not possess sufficient funds to be subject to the record keeping requirements.  We thus agree with CFTC that Forefront was not "affiliated" with the type of FCMs contemplated by Section 2(c)(2)(B)(ii)(III), and that the Defendant is not exempt from CFTC jurisdiction.

Forefront insists that Section 2(c)(2)(B)(ii)(III) exempts affiliates of all FCMs that keep records, whether they are required to do so or not:

> "Nothing in the operative subsection of the Modernization Act indicates that an FCM must strictly be 'required' to keep the financial records ... [The exemption clause of § 2(c)(2)(B)(ii)(III)] focuses on the actual making and keeping of records.  The CFTC's supposed added pre-requisite of having to be 'required' to keep records is nowhere to be found."

[D.E. 81-1 at 7].  We decline to follow this interpretation because the record-keeping requirement is located in both Section 6f(c)(2)(B) ("the records *required* under subparagraph (A)), and § 6f(c)(2)(A) ("[The FCM] shall obtain such information and make and keep such records *as the Commission, by rule or regulation, prescribes*").

Taking a rather inconsistent position with respect to statutory interpretation, Forefront maintains that the phrase "records required under subparagraph (A)" is akin to disposable legislative dicta, merely a transitional phrase, that should not support a significant new requirement to the affiliate exemption. [D.E. 97-1 at 3].  And yet, Forefront also acknowledges that the Court's "obligation is to apply the statute as Congress wrote it." *See, e.g., Dunn v. CFTC*, 519 U.S. 465, 470, 117 S. Ct. 913, 137 L. Ed. 2d 93 (1997).  Forefront's interpretation funs afoul of one of the fundamental tenets of statutory construction: the requirement that statutes be read so as not to render any provision meaningless or superfluous. *United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir. 2005); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979) ("As in all cases of statutory construction, our task is *to interpret the words* of these statutes *in light of the purposes* Congress sought to serve.") (emphasis added).

Forefront's interpretation of the statute would thus allow registered FCMs and their purported affiliates to skirt CFTC regulation merely by opting to keep records, whether they are required to do so or not.  When Congress enacted the Commodities Futures

Modernization Act of 2000, the intent was to provide "the CFTC with jurisdiction over retail foreign currency transactions that are not traded on an organized exchange and that are not regulated by another federal regulator." H.R. REP. NO. 106-711(III), at 54 (2000), 2000 WL 1279131, at *54. By Forefront's own admission, if found exempt from CFTC jurisdiction, the lone agency regulating its activity would be the National Futures Association ("NFA"), a self-regulatory organization for the U.S. futures industry.[13] Nevertheless, the NFA regulates firms and individuals trading with the public on U.S. futures exchanges, but Forefront traded off-exchange foreign currency. It would be at odds with the Congressional intent to interpret § 2(c)(2)(B)(ii)(III) in such a way that it would allow Forefront unfettered discretion to operate on the forex market.

Forefront adds that the CFTC would also be regulating its activities, so long as it did not extend that regulatory oversight into the realm of a remedial adjudicating function. Forefront believes that, through its construction of the statutory scheme, only individual investors through civil actions can effectuate adjudicatory relief. This extreme and self-serving interpretation of the statute flies in the face of the text of the statute and the Congressional purpose behind the CFMA.

Numerous Courts in this District have considered this identical issue, and adopted the position of the CFTC. *See, e.g., CFTC v. Madison Forex International, LLC*, 05-61672-CIV-Altonaga/Turnoff, 2006 U.S. Dist. LEXIS 96294 (S.D. Fla. July 19, 2006); *CFTC v. G7 Advisory Services, LLC*, 406 F. Supp. 2d 1289 (S.D. Fla. 2005). The Eleventh Circuit has not had the occasion to interpret the regulatory reach of § 2(c)(2)(B)(ii)(III) because, as counsel for Forefront explained, these cases typically settle before reaching appeal. Absent contrary authority on this issue, we do not see any reason to deviate from the

---

[13]     National Futures Association, http://www.nfa.futures.org/index.asp (last visited Dec. 20, 2007).

prior interpretations of our colleagues in this District, and find that Forefront is not exempt from CFTC regulatory jurisdiction under § 2(c)(2)(B)(ii)(III).

### C. *CFTC Has Jurisdiction to Assert a Claim for Principal/Agent Liability*

In Count 1, Forefront's only alleged liability is as a principal of the Addison Group. As a principal is liable for the acts of its agent, Forefront is thus charged with violating 7 U.S.C. § 6c(b), 17 C.F.R. § 1.1(b)(1) and (3), and 17 C.F.R. § 32.9(a) and (c) stemming from its agent Addison Enterprise's fraudulent trading.  Forefront argues unconvincingly that because Section 2(a)(1)(B) (a statute imposing principal/agent liability) is not mentioned in Section 2(c)(2)(C),[14] the CFTC cannot enforce these claims.  Further, Forefront adds that the statute is unconstitutionally vague.  These arguments fail on four fronts.

First, even if we were to find Section 2(a)(1)(B) inapplicable, the CFTC would still have a claim for vicarious liability under 17 C.F.R. § 1.2, and that establishes liability of a principal for the act of an agent under the Commodity Exchange Act. 17 C.F.R. § 1.1 ("The provisions of this section shall be applicable ... to the extent that the Commission exercises jurisdiction ... as provided in section 2(c)(2)(B)").[15]  In fact, the language imputing vicarious liability on Forefront in 17 C.F.R. § 1.2 is the identical language in Section 2(a)(1)(B).   The rules under the Code of Federal Regulation "establish

---

[14]      "Notwithstanding subclauses (II) and (III) of subparagraph (B)(ii), agreements, contracts, or transactions described in subparagraph (B) shall be subject to sections 6b, 6c(b), 15 and 13b (to the extent that sections 9, 15, and 13b of this title prohibit manipulation of the market price of any commodity, in interstate commerce, or for future delivery on or subject to the rules of any market), 13a-1, 13a-2, and 12(a) of this title if they are entered into by a futures commission merchant or an affiliate of a futures commission merchant that is not also an entity described in subparagraph (B)(ii) of this paragraph." 7 U.S.C. § 2(c)(2)(C).

[15]      We acknowledge that 17 C.F.R. § 1.1 is *inapplicable* to persons described in section 2(c)(2)(B)(ii)(III), but as explained above, Forefront is not an exempt entity as described in that subsection.

administrative procedures necessary to implement the CFMA, interpret certain of the CFMA's provisions and provide guidance on compliance with various of its requirements." A New Regulatory Framework for Trading Facilities, Intermediaries and Clearing Organizations, 66 Fed. Reg. 42256, 2001 WL 896283 at *42256 (Aug. 10, 2001) (to be codified at 17 C.F.R. §§ 1 *et seq.*).

Second, the CFTC is not seeking to impose liability pursuant to Section 2(c)(2)(C): "Section 2(c)(2)(C) is invoked only if [Forefront] qualifies as a proper counterparty, which it does not ... the foreign currency options transactions entered into by [Forefront] are subject to *all* provisions of the Act." [D.E. 86 at 10].

Third, had we needed to apply Section 2(c)(2)(C), it nevertheless reserves the CFTC's anti-fraud and anti-manipulation jurisdiction with regard to retail foreign currency futures transactions where one party is not an eligible contract participant and the counterparty is a registered FCM, or an affiliate of an FCM. *Madison Forex Int'l*, 2006 U.S. Dist. LEXIS 96294 at *9-11. It was Congress's intent to reserve the CFTC's anti-fraud and anti-manipulation jurisdiction over transactions involving registered FCMs and their affiliates, as evidenced by the opening phrase of Section 2(c)(2)(C): "[n]otwithstanding subclauses (II) and (III) of subparagraph (B)(ii)." *Id.* Accordingly, even if Forefront was a proper counterparty, the CFTC would still have jurisdiction to regulate its transactions to make sure the Addison Group (as the agent) and Forefront (as the principal) complied with 7 U.S.C. § 6c(b), the first charge under Count 1.[16]

Fourth, the argument that Section 2(c)(2)(C) should be dismissed as unconstitutionally vague is not persuasive. For a facial challenge to a legislative

---

[16]     It remains to be seen whether, under this scenario, the CFTC would also be able to enforce 17 C.F.R. § 1.1(b)(1) and (3), and 17 C.F.R. § 32.9(a) and (c), the remaining charges in Count 1 against the Addison Group for which Forefront is being alleged vicariously liable.

enactment to succeed, the challenger must establish that no set of circumstances exists under which the Act would be valid.  *See Hornton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1329 (11th Cir. 2001).  Admittedly the CFMA is complex, but we cannot find a civil statute void for vagueness unless the statute is "so vague and indefinite as really to be no rule or standard at all." *Seniors Civil Liberties Ass'n v. Kemp*, 965 F.2d 1030, 1036 (11th Cir. 1992) (quoting *Boutilier v. INS,* 387 U.S. 118, 123, 87 S. Ct. 1563, 18 L. Ed. 2d 661 (1967)).  This is clearly not the case.[17]

We thus deny Defendant's Motion to Dismiss Count 1 because the CFTC sufficiently pled a vicarious liability claim against Forefront.

### D.    *Commission Regulation 32.11(a) Applies to Off-Exchange Foreign Currency Transactions, Despite Being Enacted Prior to the CFMA*

Count 2 of the Complaint seeks to hold Forefront directly liable for violations of 17 C.F.R. § 32.11(a) (unlawful solicitation of commodities options) and 7 U.S.C. § 6c(b) (prohibiting conduct in violation of existing CFTC regulations).  Primarily, Forefront claims that Section 32.11(a), which was last amended in 1988, does not apply because the definition of "commodity option" at that time did not include forex transactions.  Although that term has since been amended to purportedly include such transactions, Forefront takes issue with the lack of notice: "Any such order, rule or regulation [criminalizing forex transactions] may be made only after notice and opportunity for hearing." 7 U.S.C. § 6c(b).

Forefront's argument is based on a flawed premise that Section 6c(b) is merely an enabling statute allowing the CFTC to promulgate appropriate regulations "after notice and opportunity for hearing."  In addition to serving as an enabling statute, it also

---

[17]    *See also Florida Ass'n of Professional Lobbyists, Inc. v. Division of Legislative Information Services*, 431 F. Supp. 2d 1228, 1235 (N.D. Fla. 2006) (act regulating legislative and executive lobbying not void for vagueness).

prohibits conduct in violation of existing CFTC regulations. *See G7 Advisory Services*, 406 F. Supp. 2d at 1297. Section 32.11(a) was in effect prior to the enactment of the CFMA, but Congress left the statute unaltered insofar as it related to forex transactions. *See id.* ("It is proper to consider that Congress acts with knowledge of existing law, and that absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction.") (citations omitted).  Nullifying Section 32.11 of effect would be contrary to the CFMA's purpose of clarifying, not revoking, the CFTC's authority to regulate forex transactions.

### III.    CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendant's Motion to Dismiss the Complaint [D.E. 81-1] is **DENIED**.   Defendant's Answer to the pending Complaint should be filed within ten days from the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of January, 2008.

_____

EDWIN G. TORRES
United States Magistrate Judge